In the Matter of Patricia G. SMITH, Debtor.

Patricia G. SMITH, Plaintiff,

v.

AMERICAN FINANCE SYSTEM OF GEORGIA, INC., Defendant.

Bankruptcy No. 80–00960A.
Adv. No. 80–0504A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Oct. 13, 1981.

Dwight D. Bowen, Atlanta, Ga., for plaintiff.

Lowell H. Hughen, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendant.

## MEMORANDUM OF OPINION

A. D. KAHN, Bankruptcy Judge.

The subject of this opinion is cross-motions for summary judgment filed by Plaintiff-Debtor Patricia G. Smith and Defendant-Creditor American Finance System of Georgia, Inc. ("American") regarding Plaintiff's Complaint, which alleges violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, and the "Secondary Security Deed Act," (the "Act"), *Ga.Code Ann.* §§ 57–201 *et seq.*, in connection with a loan transaction in 1977.

Plaintiff filed a petition for relief pursuant to Chapter 13 of the Bankruptcy Reform Act of 1978 (the "Code") on March 24, 1980. She scheduled as a disputed claim a debt of $5,800.00 owed to the Defendant, which was secured by a second mortgage on Plaintiff's residence. In connection with the claim she initiated this adversary action "for rescission and money damages," seeking: as to Count I of her Complaint, $1,000.00 in damages for Defendant's alleged material nondisclosures in violation of the TILA; as to Count II, $1,000.00 in damages for Defendant's failure to respond to Plaintiff's attempted rescission of the loan transaction, also allegedly in violation of the TILA; and, as to Count III, a determination that the subject loan was void and unenforceable as a result of alleged violations of the Act. Defendant answered and counterclaimed. Plaintiff then replied, and included in her Reply a Counterclaim that incorporated by reference Count I of her Complaint. In the Counterclaim Plaintiff alleged that she was entitled to *recoup* TILA statutory damages, and alleged damages of $8,000.00. Subsequently Plaintiff filed a motion for summary judgment.

By order of this Court on July 7, 1980, the hearing in the bankruptcy proceeding on Ms. Smith's formal objection to American's Proof of Claim was consolidated with the hearing in the instant adversary action.

The material facts are not in dispute.

On or about September 2, 1977, Plaintiff executed and delivered a Deed to Secure Debt covering certain improved realty in Gwinnett County, Georgia, to Defendant to secure a loan of $8,400.00, which Plaintiff obtained from Defendant for personal, family, and household use. The property was Plaintiff's residence and subject to a first mortgage. Defendant also took as security for the loan a security interest in household consumer goods, a designated motor vehicle, and credit life insurance. Defendant is the loss payee of the aforementioned insurance policy.

Plaintiff did not rescind the loan transaction within three (3) business days of the transaction. However, on or about April 24, 1980, after having filed her bankruptcy petition, Plaintiff sent a letter to Defendant to rescind the "purchase agreement pursuant to 15 U.S.C. § 1639." This letter is part of the record in this proceeding.

The Court will now address the issues raised by the parties' motions for summary judgment.

### I. Is Plaintiff entitled to recoup TILA damages?

█ It is not disputed that Plaintiff's claim for damages as alleged in Count I pursuant to 15 U.S.C. § 1640 is barred by the one-year statute of limitations, 15 U.S.C. § 1640(e).

In a plain effort to avoid the statutory bar Plaintiff counterclaimed in her reply and asserted that she was entitled to *recoup* Truth in Lending damages, relying on *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), and *Plant v. Blazer Financial Services*, 598 F.2d 1357, 1358 (5th Cir. 1979). In its motion for summary judgment Defendant asserted that Plaintiff's claim for recoupment is simply a restatement of her claim for statutory damages, is barred by the statute of limitations, and is procedurally incorrect. In a supplemental brief Defendant urged dismissal of the recoupment claim based on *Hodges v. Community Loan & Investment Corp. of North Georgia*, 133 Ga.App. 336, 210 S.E.2d 826 (1974), *rev'd in part on other grounds*, 234 Ga. 427, 216 S.E.2d 274 (1975). The issue is whether Plaintiff is entitled to recoup damages in an action she herself initiated.

Plaintiff cannot avoid the statute of limitations by simply restating, in her Reply, Count I of her Complaint, which is itself barred by the statute, and calling it a "recoupment." Plaintiff is attempting to manipulate the Federal Rules of Civil Procedure to vitiate the statute of limitations, and this cannot be permitted.

In addition, Plaintiff has ignored one element of the recoupment doctrine, which requires that the main action itself be timely. *See Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). In the main action Plaintiff is seeking damages pursuant to 15 U.S.C. § 1640, and it is clear that the damages claim has not been timely filed. Hence one requirement for recoupment has not been met.

Finally, there is yet another reason why Plaintiff's recoupment claim must fail. The Georgia Court of Appeals has held that a Truth in Lending counterclaim is not in the nature of a recoupment defense, but is a setoff, and is subject to the statute of limitations. *Hodges v. Community Loan, supra*. The reasoning of the Court of Appeals is sound and this Court will follow the *Hodges* rule in this case.

As to Count I of her Complaint and her attempted recoupment, Plaintiff's motion for summary judgment should be denied, and Defendant's motion should be granted.

### II. Can Plaintiff recover damages because of Defendant's failure to respond to the notice of rescission?

The second major issue raised by the motions for summary judgment arises from Count II of Plaintiff's Complaint, in which Plaintiff showed that Defendant took a second mortgage in Plaintiff's residence in connection with the 1977 loan transaction; that Plaintiff sent a letter to Defendant pursuant to 15 U.S.C. § 1933 [1] (sic) and Regulation Z, rescinding the 1977 transaction, on or about April 24, 1980; and, that

---

1. The relevant law is Section 1635 of the TILA, which states in relevant part:

Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intent to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.
15 U.S.C. § 1635(a).

Defendant failed to return within ten (10) days the money paid under the loan in question or to release its security interest in Plaintiff's residence. Plaintiff specifically prayed that, as to Count II, Plaintiff be granted $1,000.00 plus court costs and reasonable attorney's fees. Plaintiff has not specifically prayed for rescission of the transaction in her Complaint. From the pleadings it appears that Plaintiff is seeking only damages and attorney's fees pursuant to § 1640 of the TILA because Defendant failed to respond to Plaintiff's letter of April 24, 1980, in violation of the TILA, which requires the creditor, *inter alia*, to take appropriate steps to terminate his security interest, 15 U.S.C. § 1635(b).

Defendant has neither conceded nor disputed that Plaintiff's letter of April 24, 1980, was sufficient notice of intent to rescind the transaction as required by 15 U.S.C. § 1635. The court concludes, however, that the letter was sufficient.

In order for Plaintiff to collect damages for the Defendant's failure to respond to Plaintiff's letter of intent to rescind, Plaintiff must first establish that she is *entitled to rescind* the transaction because of Defendant's material nondisclosures. *See, e. g., Gerasta v. Hibernia National Bank*, 575 F.2d 580 (5th Cir. 1978). *See also* 15 U.S.C. § 1635(a).

Thus, the next issue is whether Plaintiff is entitled to rescind the transaction by virtue of Defendant's material nondisclosures. Only after deciding this can the court consider the question of damages.

A. *The automatic stay did not prohibit Defendant from responding to the notice of rescission.*

■ Before addressing the question whether Plaintiff is entitled to rescind the loan transaction, however, the court notes the Defendant's argument in its motion for summary judgment, that it was prohibited from responding to the letter of rescission because the automatic stay was in effect. Defendant further argues that the ten-day period allowed for the Defendant's response to rescission, 15 U.S.C. § 1635(b), will begin to run from the day that the automatic stay is lifted, whether by Plaintiff's discharge or by specific order, *if* Plaintiff established material nondisclosure. Defendant argues that Plaintiff cannot recover any sums against Defendant nor rescind the transaction, until the ten-day period runs outside the bounds of the automatic stay.

In response the Debtor has argued that the rescission action is a *freeing* of the property of the estate from a security interest, and not subject to the automatic stay.

The question thus presented is whether the Debtor may recover damages from Defendant for its allegedly violating the TILA by failing to respond to the Debtor's notice of rescission while the automatic stay is in effect. This question must be examined in the context of both the Truth in Lending and the Bankruptcy Act.

This court believes that the Defendant's argument that the automatic stay prohibited it from responding to the notice of rescission is without merit. The stay prohibits actions to collect debts. 11 U.S.C. § 362. Response to the notice of rescission would have required the Defendant to *free* the Debtor's property of the Defendant's security interest, for the TILA states in part:

(b) Effect of rescission. When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the

obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor within obligation on his part to pay for it.

15 U.S.C. § 1635(b).

Response to rescission is not prohibited by the stay. If the Defendant's argument was correct, and response to the letter of rescission was prohibited by the stay, then Plaintiff would essentially be deprived of her right to rescind the loan transaction merely because she had filed bankruptcy. Such a result does not follow under the Code. Bankruptcy and rescission are not inconsistent remedies. The remedy of rescission, as set forth in the TILA and interpreted by the appellate courts, requires Defendant to take steps to terminate its security interest. This in itself does not contradict the principles of the Bankruptcy Code. Then obligations of the rescinding Plaintiff arise. Thus, bankruptcy does not really change the result dictated by TILA. The court thus concludes that the stay did not prohibit the Defendant from responding to the letter of rescission, and to this extent Defendant's motion for summary judgment should be denied.

### B. *Is the Plaintiff entitled to rescission?*

The court must now address the issue, whether Plaintiff is entitled to rescission because of the Defendant's alleged material nondisclosures.

Plaintiff sets forth three alleged nondisclosures which she also alleges to be material. The court will address these *seriatim.*

■ Plaintiff has first alleged that Defendant's disclosure statement failed to disclose that Defendant's security interest in Plaintiff's residence would cover renewals or future advances. Defendant, who did not dispute that such disclosure is required, responded that it clearly disclosed that the residence secured future renewals or advances.

The disclosure statement included the following relevant language:

In consideration of this loan and to secure the payment of the above note or any future renewal or additional advances from time to time made by Secured Party or its assigns to the Borrowers, which advances may be evidenced by additional or substitute note or notes, and by additional Security Agreements, the Borrower(s) hereby grant a security interest to said Secured Party, its successors and assigns, in the goods and chattels hereinafter described, (if no goods are described below, no Security Agreement is taken).

Immediately following the aforementioned language in the disclosure statement is a section entitled "Security Agreement," which states that "household consumer goods" and a motor vehicle secured "future and other indebtedness."

The real property *is* listed on the disclosure statement as security, *but there is no explicit language in the disclosure statement stating that the real property secures future advances and other indebtedness.* Thus, there is a defect in the disclosure statement. *See* 12 C.F.R. § 226.8(b)(5).

This nondisclosure is not material, however. A material disclosure is one " 'which a reasonable consumer would view as significantly altering the "total mix" of information made available. That is, the omission need not be so important that a reasonable consumer would probably change creditors. However, the information must be of some significance to a reasonable consumer under the circumstances in his "comparison shopping" for credit.' " (citation omitted). *Davis v. Federal Deposit Insurance Corp.,* 620 F.2d 489, 492 (5th Cir. 1980). The information not disclosed in the instant case cannot be said to be material as defined above. Hence, the nondisclosure is not one that entitles Plaintiff to rescind.

■ The second violation alleged by Plaintiff is that Defendant violated the TILA by failing to disclose the Rate of

Charge[2] as a Prepaid Finance Charge. On the disclosure statement the "Rate of Charge (fee)" and "Interest" are itemized and added together and constitute the Finance Charge. The Finance Charge and the Amount Financed are added together to give the Total of Payments. The Rate of Charge is *not* labelled as a Prepaid Finance Charge, and this is the alleged violation.

Plaintiff relies on *Jones v. Community Loan & Investment Corp. of Fulton County*, 526 F.2d 642 (5th Cir. 1976) as authority for her contention. In *Jones* the Fifth Circuit held that the loan fee charged under the Georgia Industrial Loan Act, *Ga.Code Ann.* § 25–301 *et seq.* ("GILA"), should be disclosed as a Prepaid Finance Charge. Plaintiff is attempting to analogize *Jones*, a case under the GILA, to the case at bar, involving the Secondary Security Deed Act. It is noteworthy that in *Jones* the court plainly stated that its decision was controlled by Georgia case law concerning usury. 526 F.2d at 647.

Defendant attempted to distinguish *Jones* and cited 12 C.F.R. § 226.819 in support of its position.

In deciding whether violations of the TILA have occurred this Court is guided by the recent Supreme Court decision *Anderson Bros. Ford v. Valencia*, —— U.S. ——, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981), in which it is stated:

> But as we so plainly recognized in *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555 [100 S.Ct. 790, 63 L.Ed.2d 22] (1980), absent some obvious repugnance to the statute, *the Board's regulation implementing this legislation should be accepted by the courts, as should the Board's interpretation of its own regulation.* (emphasis added)
>
> —— U.S. at ——, 101 S.Ct. at 2274.

In *Anderson Bros.* the Supreme Court relied heavily on the Federal Reserve Board's interpretation of the Act and Regulation Z, which struck "a balance between 'meaningful disclosure' and 'informational overload.'" (footnote omitted) —— U.S. at ——, 101 S.Ct. at 2276.

This Court is mandated to examine Regulation Z and the interpretations of the Federal Reserve Board in determining whether a violation of the TILA has occurred. The Court will therefore apply those Regulations and interpretations to the instant case.

The Defendant clearly disclosed the "amount financed," which is defined as "The amount of credit, ... which will be paid to the customer or for his account or to another person on his behalf, including all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge, ...." 12 C.F.R. § 226.8(d)(1). The Defendant also disclosed the finance charge. 12 C.F.R. § 226.8(d)(3).

Prepaid finance charges, which are excluded from the amount financed, 12 C.F.R. § 226.8(d)(1), must be explicitly disclosed and labelled as such. 12 C.F.R. § 226.-8(d)(2). 12 C.F.R. § 226.8(e)(1). A prepaid finance charge is "Any finance charge paid separately, in cash or otherwise, directly or indirectly to the creditor ..., or withheld by the creditor from the proceeds of the credit extended." (footnote omitted) 12 C.F.R. § 226.8(e)(1).

In the case at bar the Defendant *excluded* the Rate of Charge from the Amount Financed but did not label it as a prepaid finance charge, and this nonlabelling is the alleged violation. If the Rate of Charge is a prepaid finance charge then it should have been designated as such. 12 C.F.R. § 226.8(d)(2); 12 C.F.R. § 226.8(e)(1).

An amendment to Regulation Z states in part:

> (a) Section ... 226.8(e)(1) require that certain finance charges be disclosed as "prepaid finance charges." They also require that such prepaid finance charges

---

**2.** The "rate of charge" as used in connection with the Secondary Security Deed Act is the "fee and service charge of the lender, ... in lieu of any separate charge for any type of compensation, ... arising in respect of the loan ...." *Ga.Code Ann.* § 57–202(a) (Supp.1981). The amount of the "rate of charge" is regulated by *Ga.Code Ann.* § 57–201 (Supp.1981).

be excluded or deducted from the credit extended in arriving at the "amount financed." The question arises whether add-on, discount or other precomputed finance charges which are reflected in the face amount of the debt instrument as part of the customer's obligation, but which are excluded from the "amount financed," must be labeled as "prepaid" finance charges.

(b) The concept of prepaid finance charges was adopted to insure that the "amount financed" reflected only that credit of which the customer had the actual use. Precomputed finance charges which are included in the face amount of the obligation are not the type contemplated by the "prepaid" finance charge disclosure concept. Although such precomputed finance charges are not to be included in the "amount financed," they need not be regarded as finance charges "paid separately" or "withheld by the creditor from the proceeds of the credit extended" within the meaning of § 226.-8(e) to require labeling "prepaid" under § 226.8(c)(6) and § 226.8(d)(2). They are "finance charges", of course, to be disclosed under § 226.8(c)(8) and 226.8(d)(3)."

12 C.F.R. § 226.819.

This Court believes that the aforementioned regulation is controlling in this case, and that the Rate of Charge is not required to be disclosed as a prepaid finance charge. This conclusion is supported by an unofficial staff opinion cited to the Court by the Defendant, which indicates that if a service charge is added to the loan balance and paid over the life of the loan, it need not be treated as a prepaid finance charge. *See* F.R.B. No. 1267, December 5, 1977.

■ Plaintiff's third allegation was that Defendant violated the Truth in Lending Act by failing to disclose the Defendant's loss payee status in the credit life insurance policy as a security interest, relying on *Souife v. First National Bank of Commerce,* 628 F.2d 480 (5th Cir. 1980), and contending that the disclosure form does not disclose to an ordinary layperson that the creditor retained a security interest in insurance proceeds.

The Court finds, however, that the disclosure form plainly stated the creditor's security interest in the credit life insurance. The life insurance premium was plainly stated as $441, and the "Description of Security" stated "Other Security: Insurance if a charge is indicated above." Thus, Plaintiff's third allegation is without merit.

Based on the foregoing, the Court concludes that Plaintiff has not established a right to rescind the loan transaction, and is therefore not entitled to damages. To this extent, Plaintiff's motion for summary judgment should be denied and Defendant's motion should be granted.

III. *What is the nature of the Bankruptcy Court's jurisdiction over the state law claims?*

■ The final issues in this case are raised by Plaintiff's contention that the loan transaction is void because the Secondary Security Deed Act was violated. Defendant's argument in response to these contentions is that the Court lacks subject matter jurisdiction over these allegations, because there is no diversity nor jurisdictional amount. Defendant also argues that pendant jurisdiction is inappropriate. Defendant points to certain cases in this district such as *Ector v. Southern Discount Company,* 484 F.Supp. 654 (1979), in which U.S. District Judge Moye dismissed state claims based on the Georgia Industrial Loan Act. The state claims had been appended to TILA claims. Judge Moye deemed dismissal of the state claims in light of "policies disfavoring the exercise of pendant jurisdiction." 484 F.Supp. at 656.

First of all the Bankruptcy Court's jurisdiction over the subject Secondary Security Deed Act claims is based on Section 241(a) of the Code (28 U.S.C. § 1471), which states in relevant part:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all

civil proceedings arising under title 11 or arising in or related to cases under title 11.

28 U.S.C. § 1471(b).

Based on the foregoing statute, it is clear that the Bankruptcy Court has jurisdiction over the state law claims, and Defendant's objection based on diversity is without merit.

Having concluded that the Bankruptcy Court does have subject matter jurisdiction over the Plaintiff's state law claims, the next question is whether the Defendant's objection to jurisdiction based on pendant jurisdiction has merit.

■ Because of the specific jurisdictional statutes in the Code, 28 U.S.C. § 1471, the Court concludes that the doctrine of pendant jurisdiction is inapplicable in the Bankruptcy Court under the Code. Furthermore, questions under the TILA have been addressed herein, and it would be inappropriate for this Court to decline to decide issues relating to the Secondary Security Deed Act, considering the posture of this case. In summary, the Court concludes that jurisdiction does exist over the state law claims, and that the Court will not decline jurisdiction of the claims.

Defendant did not address the merits of Plaintiff's state law claims. Because the Court believes that opposing briefs would be helpful to clarify the issues on Plaintiff's motion for summary judgment, the Court will reserve ruling on Plaintiff's state law claims, and give Defendant ten (10) days to file responsive briefs on the questions of the alleged state law violations.